UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE WOOD**

---------------------------------------------------------------- X

ANDREW SCOTT MUSIC and HELENA MUSIC,

                 Plaintiffs,

      v.

SLEP-TONE ENTERTAINMENT CORPORATION
d/b/a SOUND CHOICE and DEREK SLEP and KURT
SLEP individually and as owners of SOUND CHOICE,

                 Defendants.

---------------------------------------------------------------- X

: Civil Action No.

**06 CV 3710**

: COMPLAINT

RECEIVED
MAY 15 2006
U.S.D.C. S.D. N.Y.
CASHIERS

        Plaintiffs, Andrew Scott Music and Helena Music by their attorneys Moses &

Singer LLP, complaining of Defendants herein, allege as follows:

### NATURE OF THIS ACTION

      1.     This is a suit for copyright infringement under the Copyright Act, Title 17

of the U.S. Code, seeking damages, profits, statutory damages if plaintiffs shall so elect,

injunctive relief and destruction of goods to redress the willful violation of plaintiffs' copyrights

in "Man of La Mancha (I, Don Quixote)," "Impossible Dream," and "Dulcinea" (the "Songs")--

three (3) original musical compositions written for the legendary Broadway musical "Man of La

Mancha."

### THE PARTIES

      2.     Plaintiff Andrew Scott Music ("ASM") is a sole proprietorship of Mitch

Leigh, the composer of the Songs, under the laws of New York, with a principal place of

business at 1501 Broadway, Suite 1313, New York, New York 10036.  ASM owns a fifty-

percent interest in the Songs and is engaged in the business of publishing, licensing and

otherwise marketing and exploiting the Songs.

506433v3  009583.0103

3.      Plaintiff Helena Music ("HM") is a sole proprietorship of Helen Darion, the widow of Joe Darion, the lyricist of the Songs, under the laws of New Hampshire, with a principal place of business at Pinnacle Road, P.O. Box 315 Lyme, New Hampshire 03768.  HM owns a fifty-percent interest in the Songs and is engaged in the business of publishing, licensing and otherwise marketing and exploiting the Songs.

4.      Defendant Slep-Tone Entertainment Corporation does business under its own name and under the name Sound Choice (collectively referred to herein as "Sound Choice").  Sound Choice is a corporation organized under the laws of North Carolina, with a principal place of business at 600 Towne Ctr. Blvd. 305, Charlotte, North Carolina 28247 and a registered office address at 14100 South Lakes Drive, Charlotte, North Carolina 28273.  Sound Choice is engaged in the business of creating, producing, manufacturing and distributing karaoke products within this Judicial District and throughout the United States and conducts its business through its wholly-owned divisions, Sound Choice Accompaniment Tracks, Sound Source Recording Studios, Hits Doctor Music, Custom Karaoke CDG, Performer's Choice, Musical Content and listentomesing.com.

5.      Defendant Derek Slep ("Derek Slep") is the President, co-founder and a principal shareholder of Sound Choice and, at all times relevant to this matter, was and continues to be the guiding force of the activities of Sound Choice and the first of two persons causing and directing the actions of Sound Choice complained of herein.

6.      Defendant Kurt Slep ("Kurt Slep") is the Chief Operating Officer, the Legal Registered Agent, co-founder and a principal shareholder of Sound Choice and, at all

times relevant to this matter, was and continues to be the second of two persons causing and directing the actions of Sound Choice complained of herein.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action based upon 28 U.S.C. §§ 1331 and 1338(a).

8.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

## OWNERSHIP OF COPYRIGHT

9.     Each of the Songs is separately copyrighted and registered with the United States Copyright Office. Schedule A to this Complaint sets forth in summary form the allegations hereinafter made with respect to Plaintiffs' respective ownership of the copyrights in the Songs. Schedule A is incorporated into this Complaint as if fully set forth herein.

10.     Plaintiffs, as listed in column 1 of Schedule A, are the owners of the copyrights in the Songs which are listed in column 2.

11.     The Songs listed in column 2 were created and written by the persons named in column 3.

12.     Plaintiffs or their predecessors in interest, where applicable, secured the exclusive rights and privileges in and to the copyrights of the Songs, and received from the Register of Copyrights Certificates of Registration as identified in column 4.

13.     The Songs are now in the renewal term of copyright, secured by due filing of applications for renewal of copyright. The Register of Copyrights issued Certificates of

Registration of the respective claims to the renewal of copyrights in the names of those claimants listed in column 5. The dates and identification numbers of such certificates are set forth in column 6.

## BACKGROUND

14.    Under § 106 of the Copyright Law, the owner of a copyright is granted several exclusive rights.

15.    The acts and omissions of the defendants violate four (4) of Plaintiffs' separate exclusive rights under § 106 of the Copyright Act:

A.    § 106(1), the exclusive right to reproduce the copyrighted work;

B.    § 106(2), the exclusive right to prepare a derivative work based upon the copyrighted work;

C.    § 106(3), the exclusive right to distribute copies of the copyrighted work to the public; and

D.    § 106(5), the exclusive right to display the copyrighted work to the public.

16.    Because Plaintiffs own the copyrights in the Songs, they have the exclusive right to issue, or decline to issue, licenses that would authorize the creation of a derivative work that incorporates the Songs, the manufacture of copies of the Songs and the printed or displayed lyrics of the Songs in such derivative work, the distribution of copies of the Songs and the lyrics of the Songs in such derivative work, and the public display of the lyrics of the Songs in synchronization with the music of the Songs in such derivative work. Plaintiffs have not issued such licenses to Defendants for Defendants' use of the Songs in suit in Defendants' karaoke products.

17.     Karaoke is a popular form of entertainment thought to have originated in Japan.  The word comes from the Japanese words "kara" which means missing or empty and "oke" which means band or orchestra.  A karaoke system consists of hardware, software and enhanced sound recordings.  The system provides prerecorded accompaniment to popular songs that a karaoke performer sings live, usually by following the lyrics to the song on a video screen.

18.     Generally, a karaoke system plays compact discs that contain songs and accompanying graphics and text (a "CDG" and/or a "DVD", collectively a "Karaoke Disc"). Typically, when a song is included on a Karaoke Disc, two versions are incorporated--a version with a vocal track so a karaoke performer may hear how the song is sung and a version without a vocal track to permit a karaoke performer to sing with musical accompaniment.  The lyrics of the song are incorporated in the Karaoke Disc and displayed as text on a video screen in synchronization with the music of the Song in order to aid the karaoke performer (the "Displayed Lyrics").  Typically, a Karaoke Disc comes with a hard copy version of the lyrics as well (the "Lyrics Sheet").

19.     A Karaoke Disc is a derivative work under the Copyright Act. Accordingly, in order to create, produce, manufacture and distribute a Karaoke Disc containing copyrighted musical compositions and their Displayed Lyrics and a Lyrics Sheet, a producer of karaoke products, such as Sound Choice, is required to obtain licenses from the copyright owners of those musical compositions authorizing such exploitation.  Although Defendants clearly knew that they needed to obtain such licenses from Plaintiffs to create and distribute Karaoke Discs incorporating the Songs in suit, they did not obtain such licenses.

## THE INFRINGEMENTS

20.    "Man of La Mancha" is one of the most famous Broadway musicals of all time.  It ran on Broadway for several years, has had three successful Broadway revivals -- the last in 2003 -- and is performed throughout the world on a regular basis.  The song "The Impossible Dream" from the show was a worldwide hit; it is still regularly licensed and continues to generate significant annual royalties as an individual musical composition.

### A.    The Defendants' Infringements

21.    Sound Choice is an elaborate and sophisticated organization involved in the recording, manufacture and distribution of karaoke products.  Derek Slep and Kurt Slep are the principal officers and shareholders of Sound Choice and control and direct the myriad activities of the company--from recording a Karaoke Disc to designing disc artwork and distributing the finished product.

22.    Defendants own and operate an on-site private recording studio where vocalists are hired to re-record karaoke versions of hit songs owned by various music publishers, including "The Impossible Dream" and two (2) other songs owned by Plaintiffs.   After a song is re-recorded, Defendants do "in-house research, graphics, printing, shipping, warehousing, sales and customer service" for each Karaoke Disc manufactured and distributed either to brick and mortar stores or via the Internet.

23.    Over the past three years (and upon information and belief during prior periods), Defendants have offered and continue to offer four (4) separate Karaoke Discs (the "Infringing Products") embodying performances of one or more of the Songs; each such product also incorporates Displayed Lyrics and/or a Lyrics Sheet.  Attached hereto as Exhibit 1 is a

schedule listing the Infringing Products offered for sale by the Defendants.  Attached hereto as Exhibit 2 are print-outs of the relevant pages from Defendants' catalog offering the Infringing Products for sale.

24.    Upon information and belief, Defendants neither sought nor obtained from Plaintiffs the licenses necessary to create and distribute the Infringing Products (e.g., mechanical licenses to re-record the music and synchronization licenses to synchronize the Displayed Lyrics to the re-recorded music).

25.    On March 14, 2006, Plaintiffs' representatives based in New York purchased copies of two (2) of the Infringing Products--"Reminiscing Gold-Volume 6" (SCRG1306) and "Broadway Classics-Volume 4" (SSG2195)--from Defendants.

26.    On March 15, 2006, Plaintiffs' representatives based in New York purchased another Infringing Product--"Classic Broadway" (SCG8127)--from Defendants.

27.    On March 16, 2006, Plaintiffs' representatives based in New York purchased a copy of the other Infringing Product--"Broadway Classics-Volume 1" (SCG8547)--from Defendants.

28.    Upon information and belief, Defendants have offered the Infringing Products for sale for more than three (3) years.

**B.    The Defendants' Willfulness**

29.    There is considerable irrefutable evidence that Defendants' infringing behavior is willful.

30.     Defendant Sound Choice has been involved in the karaoke business for over twenty (20) years and holds itself out as being the "[karaoke] industry leader for nearly two decades." On its website, www.soundchoice.com, Sound Choice boasts that it:

> [H]as supplied millions of "Sing Along" Karaoke hits to music lovers, and their songs can be found on the shelves of Wal-Mart, Target, Best Buy, and countless others throughout the world.
>
> *******
>
> [P]rovide[s] a full catalog with more than 14,500 individual song titles. These top-quality music recreations span over 100 years of music and include the biggest hits from every genre.

http://www.musicalcontent.com/about_us.php (visited February 23, 2006).

31.     Many of these song titles were recorded at Sounds Source Recording Studios, Sound Choice's in-house state-of-the-art recording studio located on the premises of Sound Choice's 25,000 square foot facility. These recordings are then distributed either through traditional channels or via the Internet through a process of digital downloading.

32.     Among the traditional channels Defendants use for distribution is Musical Content, a division of and private record label for Sound Choice that "boasts the largest library of re-recorded hits in the world." Musical Content's "Licensing" webpage states the following:

> We feature over 15,000 top-quality, low-cost re-recorded hits.... We will license our master tracks to you, so you, our valued clients, no longer have to wrangle with major record labels and pay exorbitant prices to license their sound recordings.

33.     The "Licensing" section of the webpage also states in relevant part:

> Musical Content contacts the same music publisher that Britney [Spears] contacted and gets the same clearance for

> its artistic interpretation or version of the [Rolling Stones] composition [I Can't Get No Satisfaction].
>
> \*\*\*\*\*\*\*
>
> Musical Content, in essence, is a record label - a record label specializing in re-records and karaoke compositions. We obtain the same music publishing rights that Britney would get…. We both artistically interpret our respective "words and music" clearances obtained from the music publisher and now have created our own copyright of a sound recording based upon the song composition owned by Mick Jagger and Keith Richards. They, in turn, will get compensated for each sale for their ownership of the "words and music" in the sound recording. Britney Spears and Musical Content enjoy revenue from the copyright ownership of the sound recording based upon the composition we both have licensed from the Music Publisher that administers for Mick Jagger and Keith Richards.

http://www.musicalcontent.com/licensing.php (visited February 23, 2006).

34.     Thus, Sound Choice is well aware of its obligations under the copyright law to obtain permission from copyright owners before making use of their property. Indeed, Sound Choice leads its own potential licensees step-by-step through this process on its own website. Nevertheless, Sound Choice did not meet its own obligations with respect to Plaintiffs' popular compositions, and, as a result, Plaintiffs did not "in turn… get compensated for each sale for their ownership of the 'words and music' in the sound recording." *Id.* In fact, Defendants did not compensate Plaintiffs for <u>any</u> sale of copies of Plaintiffs' famous songs.

35.     Moreover, this is not the first time Defendants have been sued for copyright infringement related to the unlawful manufacture and/or distribution of Karaoke Discs. The most recent lawsuits are described below.

36.    On December 10, 2002, Defendants were sued for copyright infringement in an action captioned *Rondor Music Int'l, et al. v. Slep-Tone Ent. Corp., et al.*, Civ. Action No. 2:02-cv-09337 (Lew, J.), (C.D. Cal.).  That action involved facts similar to those here and led music publishers to seek both monetary and injunctive relief for Sound Choice's infringing activities. The complaint states, in relevant part:

> Although Sound Choice is aware that it is required to obtain at least two separate licenses before reproducing the music and/or lyrics of Plaintiffs' musical compositions...[Sound Choice has] unlawfully reproduced and distributed karaoke versions of the Copyrighted Works without obtaining mechanical licenses, synchronization licenses, or both, from Plaintiffs' [in violation of 17 U.S.C. § 101 *et seq.*]

37.    On January 13, 2003, Defendants were sued again for copyright infringement in an action captioned *Zomba Enterprises, et al., v. Slep-Tone Ent. Corp., et al.,* Civ. Action No. 3:03-cv-00037 (Campbell, J.), (M.D. Tenn.).  The facts in that case were similar to those here.

38.    Upon information and belief, both of these lawsuits were settled for significant sums.

39.    The Defendants' willfulness with respect to the infringements in suit is further demonstrated by the fact that they sought and obtained mechanical licenses for the Songs in connection with certain other products they created, manufactured, and distributed throughout the 1990s.  Specifically, Sound Source Recording Studios obtained five (5) mechanical licenses-- licenses that authorize the re-recording of a composition--from The Harry Fox Agency, Inc. ("HFA"), a mechanical licensing organization that represents more than 27,000 music publishers,

including Plaintiffs, in connection with re-recordings of the Songs distributed by Sound Choice on four (4) cassettes and one (1) CD.

40.     It is important to note that licenses issued by HFA are product-specific and do not permit the display of lyrics in synchronization with music.  Therefore, these earlier licenses have no bearing on the infringements in suit other than to demonstrate that these Defendants knew precisely what they needed to do to distribute Karaoke Discs lawfully.  They simply chose not to do so.

41.     In light of the other infringement suits, Defendants' prior unrelated mechanical licenses for the Songs, the licensing information on its own web pages, and Defendants' many years of experience in the karaoke business, it is plain that Defendants' infringing behavior described herein was and is willful.

### First Cause of Action

42.     Sound Choice willfully infringed the copyright in the song "Man of La Mancha" by preparing a derivative work based upon this copyrighted song without license authority from Plaintiffs or any agent authorized to act on their behalf, in violation of § 106(2) of the Copyright Act.

43.     The acts and omissions of Sound Choice described herein are willful and intentional acts of infringement because it is clear that Sound Choice knew it was not licensed to prepare a derivative work incorporating Plaintiffs' song, "Man of La Mancha," and that it was required to obtain such license to make a derivative work lawfully.

44.     Defendants Derek Slep and Kurt Slep are liable for willful copyright infringement with Sound Choice because they:  (i) directly participated in Sound Choice's infringing behavior; (ii) had the right and ability to supervise Sound Choice's infringing behavior; (iii) had a direct financial interest in Sound Choice's infringing behavior; and (iv) had personal knowledge of Sound Choice's infringing behavior.

### Second Cause of Action

45.     Sound Choice willfully infringed the copyright in the song "The Impossible Dream" by preparing a derivative work based upon this copyrighted song without license authority from Plaintiffs or any agent authorized to act on their behalf, in violation of § 106(2) of the Copyright Act.

46.     The acts and omissions of Sound Choice described herein are willful and intentional acts of infringement because it is clear that Sound Choice knew it was not licensed to prepare derivative a work incorporating Plaintiffs' song, "The Impossible Dream," and that it was required to obtain such license to make a derivative work lawfully.

47.     Defendants Derek Slep and Kurt Slep are liable for willful copyright infringement with Sound Choice because they:  (i) directly participated in Sound Choice's infringing behavior; (ii) had the right and ability to supervise Sound Choice's infringing behavior; (iii) had a direct financial interest in Sound Choice's infringing behavior; and (iv) had personal knowledge of Sound Choice's infringing behavior.

### Third Cause of Action

48.     Sound Choice willfully infringed the copyright in the song "Dulcinea" by preparing a derivative work based upon this copyrighted song without license authority from

Plaintiffs or any agent authorized to act on their behalf, in violation of § 106(2) of the Copyright Act.

49.    The acts and omissions of Sound Choice described herein are willful and intentional acts of infringement because it is clear that Sound Choice knew it was not licensed to prepare a derivative work incorporating Plaintiffs' song, "Dulcinea," and that it was required to obtain such license to make a derivative works lawfully.

50.    Defendants Derek Slep and Kurt Slep are liable for willful copyright infringement with Sound Choice because they:  (i) directly participated in Sound Choice's infringing behavior; (ii) had the right and ability to supervise Sound Choice's infringing behavior; (iii) had a direct financial interest in Sound Choice's infringing behavior; and (iv) had personal knowledge of Sound Choice's infringing behavior.

### Fourth Cause of Action

51.    Sound Choice willfully infringed the copyright in the song, "Man of La Mancha" by manufacturing copies of the song including the Displayed Lyrics and/or Lyrics Sheet in the Infringing Products without license authority from Plaintiffs or any agent authorized to act on their behalf, in violation of § 106(1) of the Copyright Act.

52.    The acts and omissions of Sound Choice described herein are willful and intentional acts of infringement because it is clear that Sound Choice knew it was not licensed to make copies of Plaintiffs' Songs and lyrics and that it was required to obtain such licenses to make copies lawfully.

53.    Defendants Derek Slep and Kurt Slep are liable for willful copyright infringement with Sound Choice because they:  (i) directly participated in Sound Choice's infringing behavior; (ii) had the right and ability to supervise Sound Choice's infringing behavior; (iii) had a direct financial interest in Sound Choice's infringing behavior; and (iv) had personal knowledge of Sound Choice's infringing behavior.

## Fifth Cause of Action

54.    Sound Choice willfully infringed the copyright in the song, "The Impossible Dream" by manufacturing copies of the song including the Displayed Lyrics and/or Lyrics Sheet in the Infringing Products without license authority from Plaintiffs or any agent authorized to act on their behalf, in violation of § 106(1) of the Copyright Act.

55.    The acts and omissions of Sound Choice described herein are willful and intentional acts of infringement because it is clear that Sound Choice knew it was not licensed to make copies of Plaintiffs' Songs and lyrics and that it was required to obtain such licenses to make copies lawfully.

56.    Defendants Derek Slep and Kurt Slep are liable for willful copyright infringement with Sound Choice because they:  (i) directly participated in Sound Choice's infringing behavior; (ii) had the right and ability to supervise Sound Choice's infringing behavior; (iii) had a direct financial interest in Sound Choice's infringing behavior; and (iv) had personal knowledge of Sound Choice's infringing behavior.

## Sixth Cause of Action

57.    Sound Choice willfully infringed the copyright in the song, "Dulcinea" by manufacturing copies of the song including the Displayed Lyrics and/or Lyrics Sheet in the

Infringing Products without license authority from Plaintiffs or any agent authorized to act on their behalf, in violation of § 106(1) of the Copyright Act.

58.     The acts and omissions of Sound Choice described herein are willful and intentional acts of infringement because it is clear that Sound Choice knew it was not licensed to make copies of Plaintiffs' Songs and lyrics and that it was required to obtain such licenses to make copies lawfully.

59.     Defendants Derek Slep and Kurt Slep are liable for willful copyright infringement with Sound Choice because they:  (i) directly participated in Sound Choice's infringing behavior; (ii) had the right and ability to supervise Sound Choice's infringing behavior; (iii) had a direct financial interest in Sound Choice's infringing behavior; and (iv) had personal knowledge of Sound Choice's infringing behavior.

## Seventh Cause of Action

60.     Sound Choice willfully infringed the copyright in the song "Man of La Mancha" by synchronizing the display of the lyrics with the copyrighted music in the Infringing Products without license authority from Plaintiffs or any agent authorized to act on their behalf, in violation of § 106(5) of the Copyright Act.

61.     The acts and omissions of Sound Choice described herein are willful and intentional acts of infringement because it is clear that Sound Choice knew it was not licensed to synchronize the display of the lyrics with the copyrighted music from Plaintiffs' song, "Man of La Mancha," and that it was required to obtain such license.

62.     Defendants Derek Slep and Kurt Slep are liable for willful copyright infringement with Sound Choice because they:  (i) directly participated in Sound Choice's infringing behavior; (ii) had the right and ability to supervise Sound Choice's infringing behavior; (iii) had a direct financial interest in Sound Choice's infringing behavior; and (iv) had personal knowledge of Sound Choice's infringing behavior.

### Eighth Cause of Action

63.     Sound Choice willfully infringed the copyright in the song "The Impossible Dream" by synchronizing the display of the lyrics with the copyrighted music in the Infringing Products without license authority from Plaintiffs or any agent authorized to act on their behalf, in violation of § 106(5) of the Copyright Act.

64.     The acts and omissions of Sound Choice described herein are willful and intentional acts of infringement because it is clear that Sound Choice knew it was not licensed to synchronize the display of the lyrics with the copyrighted music from Plaintiffs' song, "The Impossible Dream," and that it was required to obtain such license.

65.     Defendants Derek Slep and Kurt Slep are liable for willful copyright infringement with Sound Choice because they:  (i) directly participated in Sound Choice's infringing behavior; (ii) had the right and ability to supervise Sound Choice's infringing behavior; (iii) had a direct financial interest in Sound Choice's infringing behavior; and (iv) had personal knowledge of Sound Choice's infringing behavior.

### Ninth Cause of Action

66.     Sound Choice willfully infringed the copyright in the song "Dulcinea" by synchronizing the display of the lyrics with the copyrighted music in the Infringing Products

without license authority from Plaintiffs or any agent authorized to act on their behalf, in violation of § 106(5) of the Copyright Act.

67.     The acts and omissions of Sound Choice described herein are willful and intentional acts of infringement because it is clear that Sound Choice knew it was not licensed to synchronize the display of the lyrics with the copyrighted music from Plaintiffs' song, "Dulcinea," and that it was required to obtain such license.

68.     Defendants Derek Slep and Kurt Slep are liable for willful copyright infringement with Sound Choice because they:  (i) directly participated in Sound Choice's infringing behavior; (ii) had the right and ability to supervise Sound Choice's infringing behavior; (iii) had a direct financial interest in Sound Choice's infringing behavior; and (iv) had personal knowledge of Sound Choice's infringing behavior.

**Tenth Cause of Action**

69.     Sound Choice willfully infringed the copyright in the song, "The Impossible Dream" by distributing copies of the song in the Infringing Products without license authority from Plaintiffs or any agent authorized to act on their behalf, in violation of § 106(3) of the Copyright Act.

70.     The acts and omissions of Sound Choice described herein are willful and intentional acts of infringement because it is clear that Sound Choice knew it was not licensed to distribute copies of Plaintiffs' Songs and that it was required to obtain such licenses to distribute copies lawfully.

71.     Defendants Derek Slep and Kurt Slep are liable for willful copyright infringement with Sound Choice because they:  (i) directly participated in Sound Choice's infringing behavior; (ii) had the right and ability to supervise Sound Choice's infringing behavior; (iii) had a direct financial interest in Sound Choice's infringing behavior; and (iv) had personal knowledge of Sound Choice's infringing behavior.

## Eleventh Cause of Action

72.     Sound Choice willfully infringed the copyright in the song, "Man of La Mancha" by distributing copies of the song in the Infringing Products without license authority from Plaintiffs or any agent authorized to act on their behalf, in violation of § 106(3) of the Copyright Act.

73.     The acts and omissions of Sound Choice described herein are willful and intentional acts of infringement because it is clear that Sound Choice knew it was not licensed to distribute copies of Plaintiffs' Songs and that it was required to obtain such licenses to distribute copies lawfully.

74.     Defendants Derek Slep and Kurt Slep are liable for willful copyright infringement with Sound Choice because they:  (i) directly participated in Sound Choice's infringing behavior; (ii) had the right and ability to supervise Sound Choice's infringing behavior; (iii) had a direct financial interest in Sound Choice's infringing behavior; and (iv) had personal knowledge of Sound Choice's infringing behavior.

### Twelfth Cause of Action

75.     Sound Choice willfully infringed the copyright in the song, "Dulcinea" by distributing copies of the song in the Infringing Products without license authority from Plaintiffs or any agent authorized to act on their behalf, in violation of § 106(3) of the Copyright Act.

76.     The acts and omissions of Sound Choice described herein are willful and intentional acts of infringement because it is clear that Sound Choice knew it was not licensed to distribute copies of Plaintiffs' Songs and that it was required to obtain such licenses to distribute copies lawfully.

77.     Defendants Derek Slep and Kurt Slep are liable for willful copyright infringement with Sound Choice because they:  (i) directly participated in Sound Choice's infringing behavior; (ii) had the right and ability to supervise Sound Choice's infringing behavior; (iii) had a direct financial interest in Sound Choice's infringing behavior; and (iv) had personal knowledge of Sound Choice's infringing behavior.

WHEREFORE, Plaintiffs demand relief as follows:

A.      that Defendants jointly and severally be required to pay to Plaintiffs the damages sustained by Plaintiffs as a consequence of Defendants' willful infringement of Plaintiffs' copyrights in the Songs;

B.      that Defendants account to Plaintiffs for all gains, profits and advantages derived by Defendants from such infringements;

C.      that, in lieu of such actual damages and profits, if Plaintiffs so elect pursuant to § 504 of the Copyright Act, that Defendants jointly and severally be required to pay no less than

$150,000 in statutory damages for each of the multiple willful infringements of Plaintiffs' copyrights in the three (3) Songs, in the aggregate sum of $450,000.00.

D.    that Defendants and their respective officers, agents, servants, and employees and those persons in active concert or participation with them, be enjoined and restrained permanently from producing, manufacturing or otherwise exploiting copies of the Songs and lyrics;

E.    that Defendants and their respective officers, agents, servants, employees and those persons in active concert or participation with them, be enjoined and restrained permanently from infringing in any manner the copyrights in the Songs;

F.    that Defendants, and each of them, be required, at their own expense, to recall the Infringing Products from any distributors, retailers, vendors or others to whom they have distributed or sold copies of the Infringing Products to and deliver up for destruction all such recalled copies of the Infringing Products as well as any master recordings, matrices, "mothers," and any other item used by Defendants to manufacture copies of the Infringing Products;

G.    that Plaintiffs recover the costs and disbursements of this action, including reasonable attorneys' fees and pre-judgment interest on all sums awarded; and

[THE REST OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

H.    that Plaintiffs have such other and further relief as the Court deems just and proper.

Dated: May 16, 2006
       New York, New York

                                        Respectfully submitted,

                                        MOSES & SINGER LLP
                                        405 Lexington Avenue
                                        12th Floor
                                        New York, NY 10174
                                        Tel:    212-554-7868
                                        Fax:    212-544-7700


                                        _____
                                        Ross J. Charap (RC 2584)
                                        Julie Stark (JS 8925)
                                        Michelle Zarr (MZ 2936)

                                        Attorneys for Plaintiffs

## SCHEDULE A

| 1.<br>Plaintiffs | 2.<br>Composition | 3.<br>Writers | 4.<br>Copyright No. &<br>Registration Date | 5.<br>Renewal Claimant | 6.<br>Copyright Renewal No.<br>& Renewal Date |
|---|---|---|---|---|---|
| Andrew Scott Music<br>and Helena Music | Man Of La Mancha | Mitch Leigh<br>& Joe Darion | EP210309<br>11/17/1965 | Joe Darion as author of<br>words | RE623178<br>03/22/1993 |
| Andrew Scott Music<br>and Helena Music | Dulcinea | Mitch Leigh<br>& Joe Darion | EP210308<br>11/17/1965 | Joe Darion as author of<br>words | RE626701<br>03/22/1993 |
| Andrew Scott Music<br>and Helena Music | The Impossible Dream | Mitch Leigh<br>& Joe Darion | EP210311<br>11/17/1965 | Joe Darion as author of<br>words | RE623180<br>03/22/1993 |

510037v1  009583.0103